| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MICHAEL A. OGLE, ) <br> ) <br> Defendant. ) | Nos.: 3:08-CR-125-TAV-JEM-1 <br> 3:11-CR-035-TAV-JEM-1 |

# MEMORANDUM OPINION AND ORDER

This matter is before the Court on defendant's pro se motions for compassionate release [Case No. 3:08-cr-125, Docs. 140, 146, 155; Case No. 3:11-cr-35, Doc. 160], to which the government has responded in opposition [Case No. 3:08-cr-125, Doc. 150]. Also before the Court are defendant's pro se motions for appointment of counsel [Case No. 3:08-cr-125, Doc. 147], leave to proceed in forma pauperis [Case No. 3:08-cr-125, Docs. 142, 148], motion to compel government response [Case No. 3:08-cr-125, Doc. 152], and motion for due process [Case No. 3:08-cr-125, Doc. 154; Case No. 3:11-cr-35, Doc. 159]. For the reasons set forth more fully below, defendant's motions for compassionate release [Case No. 3:08-cr-125, Docs. 140, 146, 155; Case No. 3:11-cr-35, Doc. 160] are **DENIED**. Defendant's motions for appointment of counsel [Case No. 3:08-cr-125, Doc. 147], leave to proceed in forma pauperis [Case No. 3:08-cr-125, Docs. 142, 148], and motion to compel government response [Case No. 3:08-cr-125, Doc. 152] are **DENIED as moot**. Finally, defendant's motion for due process [Case No. 3:08-cr-125, Doc. 154; Case No. 3:11-cr-35, Doc. 159] is **DENIED**.

## I. Background

On July 30, 2009, defendant pled guilty to armed bank robbery, in violation of 18 U.S.C. §§ 2113(a) and (3), 2 (Count 2), using or carrying and brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c) and 2 (Count 3), and carjacking, in violation of 18 U.S.C. §§ 2119 and 2 (Count 4) [Case No. 3:08-cr-125, 63]. United States District Judge Thomas W. Phillips sentenced defendant to a total term of imprisonment of 245 months, consisting of 125 months as to each Counts 2 and 4, to be served concurrently, and a term of 120 months as to Count 3, to be served consecutively to Counts 2 and 4 [Case No. 3:08-cr-125, Doc. 84].

Defendant was subsequently indicted on a charge of escape, in violation of 18 U.S.C. § 751 (Count 1) [Case No. 3:11-cr-35, Doc. 1]. Defendant proceeded to trial and was found guilty [Case No. 3:11-cr-35, Doc. 112]. United States District Judge Pamela L. Reeves sentenced defendant to 30 months, to be served consecutively to the sentence imposed on Case Number 3:08-CR-125 [Case. No. 3:11-cr-35, Doc. 149].

## II. Legal Standard

A court generally lacks "the authority to change or modify [a sentence, once imposed,] unless such authority is expressly granted by statute." *United States v. Thompson*, 714 F.3d 946, 948 (6th Cir. 2013) (citing *United States v. Curry*, 606 F.3d 323, 326 (6th Cir. 2010)). The First Step Act of 2018's amendment of § 3582(c)(1)(A) revised one such exception. First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018). Prior to the First Step Act, a district court could grant relief under § 3582(c)(1)(A)

2

only on motion of the Director of the Bureau of Prisons. Now a court may modify a defendant's sentence upon a motion by a defendant if the defendant has exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or after the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A).

If the defendant surmounts this preliminary hurdle, the Court may grant a sentence reduction "after considering the factors set forth in § 3553(a) to the extent that they are applicable" if it finds:

> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

*Id*. Defendant seeks relief under § 3582(c)(1)(A)(i) [Docs. 140, 146, 155].

If the exhaustion requirement is satisfied, courts must then follow the statute's three-step test:

> At step one, a court must "find[ ]" whether "extraordinary and compelling reasons warrant" a sentence reduction. At step two, a court must "find[ ]" whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." The Commission's policy statement on compassionate release resides in U.S.S.G. § 1B1.13. Thus, if § 1B1.13 is still "applicable," courts must "follow the Commission's instructions in [§ 1B1.13] to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized." At step three, "§ 3582(c)[(1)(A)]

3

> instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case."

*United States v. Jones*, 980 F.3d 1098, 1107–08 (6th Cir. 2020) (internal citations omitted). In considering a compassionate release motion, "district courts may deny compassionate release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others" but must "address all three steps" if granting such a motion. *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021).

## III. Analysis

### A. Exhaustion

The Court first examines whether defendant has satisfied § 3582(c)(1)(A)'s exhaustion requirement, which is a mandatory prerequisite to consideration of a compassionate release request on the merits. *United States v. Alam*, 960 F.3d 831, 833–34 (6th Cir. 2020). "When 'properly invoked,' mandatory claim-processing rules 'must be enforced.'" *Id.* at 834 (quoting *Hamer v. Neighborhood Hous. Servs. of Chi.*, 138 S. Ct. 13, 17 (2017)). The only exceptions to such a mandatory claim-processing rule are waiver and forfeiture. *Id.* (citing *United States v. Cotton*, 535 U.S. 625, 630 (2002)).

In this case, the government concedes defendant's satisfaction of the exhaustion requirement [Case No. 3:08-cr-125, Doc. 150, p. 3]. Accordingly, the Court will proceed to evaluate defendant's motion per the three-step test explained above.

4

Case 3:08-cr-00125-TAV-JEM    Document 157    Filed 05/07/25    Page 4 of 13
PageID #: 824

## B. Extraordinary and Compelling Reasons

Turning to whether defendant has set forth extraordinary and compelling grounds for relief, the Court first notes that the United States Court of Appeals for the Sixth Circuit previously held that "[i]n cases where incarcerated persons file motions for compassionate release, federal judges may skip step two of the § 3582(c)(1)(A) inquiry and have full discretion to define 'extraordinary and compelling' without consulting the policy statement of § 1B1.13." *United States v. Jones*, 980 F.3d 1098, 1111 (6th Cir. 2020). This was so because the applicable policy statement, United States Sentencing Guideline § 1B1.13, as written at the time, did not contemplate inmate-filed motions for compassionate release, but instead, was limited to circumstances where the Bureau of Prisons filed a motion on an inmate's behalf. *Id.* at 1109–10; *see also* U.S.S.G. § 1B1.13 (2018).

However, the Sentencing Commission amended the policy statement in § 1B1.13, effective November 1, 2023, to encompass inmate-filed motions for compassionate release. U.S.S.G. § 1B1.13 (2023). It thus appears that the Sixth Circuit's prior ruling that § 1B1.13 is not an applicable policy statement to inmate-filed motions for compassionate release is no longer consistent with the Guidelines. *See United States v. Nash*, No. 23-3635, 2024 WL 1979067, at *3 (6th Cir. Apr. 30, 2024) (noting the amendment to § 1B1.13 and stating that "prior to [the date of amendment], no guideline policy statement applied to compassionate-release motions brought by defendants, and a district court could deny a defendant-filed motion without reference to any policy statement"); *see also United States v. Ringgold*, No. ELH-17-232, 2023 WL 7410895, at *5–6 (D. Md. Nov. 8, 2023) ("[I]t

5

appears that the Fourth Circuit's conclusion in *McCoy*, 981 F.3d at 281, to the effect that '§ 1B1.13 is not an 'applicable' policy statement,' is no longer consistent with the Guidelines. This is because the Policy Statement is now expressly applicable to defendant-filed motions pursuant to 18 U.S.C. § 3582(c)(1)(A)."). However, "[t]he new policy statement largely preserves the discretion district courts held to consider any extraordinary and compelling reason for release." *United States v. Davis*, No. 3:20-cr-16, 2023 WL 7356579, at *2 (W.D. N.C. Nov. 7, 2023).

As amended, § 1B1.13(b) states that "[e]xtraordinary and compelling reasons exist under any of the following circumstances or a combination thereof," and discusses when the medical circumstances of the defendant, the age of the defendant, the family circumstances of the defendant, the defendant's victimization in custody, and other reasons may constitute extraordinary circumstances. U.S.S.G. § 1B1.13(b)(1)–(6). Here, defendant cites the following as extraordinary and compelling grounds warranting his release: (1) a change in the law purportedly resulting in a lower sentence today; (2) his mental health problems; (3) his rehabilitative efforts; and (4) a combination of factors that satisfies the "other reasons" provision contained in § 1B1.13(b)(5) [Case No. 3:08-cr-125, Docs. 140, 146, 155; Case No. 3:11-cr-35, Doc. 160].

    **i.    Change in the Law**

The amended policy statement provides that changes to non-retroactive law can constitute an extraordinary and compelling reason for release under certain conditions. *See* U.S.S.G. § 1B1.13(b)(6). However, in April 2025, the Sixth Circuit invalidated section

1B1.13(b)(6). *United States v. Bricker*, No. 24-3286, 2025 WL 1166016, at *1 (6th Cir. Apr. 22, 2025). Based in part on the United States Supreme Court's decision in *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024), which reduced the interpretive deference afforded to agencies, the Sixth Circuit determined that the Commission "overstepped its authority and issued a policy statement that is plainly unreasonable under the statute and in conflict with the separation of powers." *Bricker*, 2025 WL 1166016, at *1; *see also Moctezuma-Reyes v. Garland*, 124 F.4th 416, 420 (6th Cir. 2024) (clarifying when courts should independently interpret statutes).

In reaching its conclusion, the *Bricker* majority clarified that the Sixth Circuit's decision in *United States v. McCall*, 56 F.4th 1048 (6th Cir. 2022) (en banc), which predates the amended policy statement, remains the law of this Circuit. In contrast to the policy statement contained in U.S.S.G. § 1B1.13(b)(6), the *McCall* court held that the fact "that a defendant might receive a different sentence today than he received years ago represents the routine business of our legal system" and "cannot supply an extraordinary and compelling reason to reduce a lawful sentence whose term Congress enacted, and the President signed, into law." *Id.* at 1065. In other words, because *Loper Bright* reduced courts' deference to Commission policy statements, and the *Bricker* majority held that section 1B1.13(b)(6) is "plainly unreasonable," "we [are] bound by *McCall*'s views on the plain meaning of 'extraordinary and compelling.'" *Bricker*, 2025 WL 1166016, at *1–*9 (citing *United States v. Ferguson*, 868 F.3d 514, 515 (6th Cir. 2017)).

7

Because U.S.S.G. § 1B1.13(b)(6) has been invalidated and changes to non-retroactive law cannot constitute an extraordinary and compelling reason for release, these arguments are moot. Accordingly, the Court finds that defendant's arguments regarding a change in law do not constitute an extraordinary and compelling ground warranting release.

Additionally, the Court notes that some of defendant's arguments under § 1B1.13(b)(5), the "other reasons" provision of the policy statement, relate to the disparity in sentencing that he would likely receive under today's law compared to that under which he was originally sentenced. Indeed, several of the out of Circuit cases cited by defendant appear to have granted other defendant's motions on § 1B1.13(b)(5) grounds related to defendants' § 1B1.13(b)(6) arguments, a pathway that has been foreclosed by the Sixth Circuit's decision in *Bricker*. *See* 2025 WL 1166016, at *1. Therefore, the Court finds that to the extent defendant argues his unusually long sentence and/or change in law should be considered among other factors under § 1B1.13(b)(5), such arguments are rejected on the basis of *Bricker*.[1]

### ii. Defendant's Mental Condition

The policy statement provides four situations when a defendant's medical condition may constitute an extraordinary and compelling reason for release:

---

[1] The Court also notes that, even if it could consider a change of law under either § 1B1.13(b)(6) or § 1B1.13(b)(5), defendant has not shown that any change of law would result in a lower sentence today, because, while he refers to the "stacking" of § 924(c) sentences, he received only one conviction for § 924(c), and it appears to the Court that his sentence on that count would remain unchanged under the current legal landscape.

8

(A) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory) . . . .

(B) The defendant is—

(i) suffering from a serious physical or medical condition,

(ii) suffering from a serious functional or cognitive impairment, or

(iii) experiencing deteriorating physical or mental health because of the aging process that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

(D) The defendant presents the following circumstances—

(i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak or infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;

(ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and

(iii) such risk cannot be adequately mitigated in a timely manner.

U.S.S.G. § 1B1.13(b)(1).

Defendant indicates that he suffers from several mental health conditions, namely, schizophrenia, mood disorder, and personality disorder [Case No. 3:08-cr-125, Docs. 140, 146, 155; Case No. 3:11-cr-35, Doc. 160]. However, in his first two compassionate release motions, defendant indicates that he "is currently receiving specialized medical treatment"

9

for his mental health issues [Case No. 3:08-cr-125, Doc. 140, p. 8, Doc. 146, p. 8]. In his third compassionate release motion, filed after the government's response, defendant simply states that he needs more treatment than what the BOP can provide [Case No. 3:08-cr-125, Doc. 155, p. 6; Case No. 3:11-cr-35, Doc. 160, p. 6].

The government argues that defendant has not alleged, much less provided evidence to support, that his mental conditions constitute a serious functional or cognitive impairment that substantially diminishes his ability to provide self-care in BOP custody from which he is not expected to recover [Case No. 3:08-cr-125, Doc. 150, p. 5].

As noted above, § 1B1.13(b)(1)(B)(iii) provides that a defendant who suffers from deteriorating physical or mental health may qualify for compassionate release where, among other conditions, this medical decline "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility." U.S.S.G. § 1B1.13(b)(1)(B)(iii). Here, defendant has not demonstrated that his mental conditions inhibit his ability to "provide self-care," particularly given his admission, and the medical records supporting, the fact that he is receiving specialized care in BOP custody for his mental conditions.

### iii. Defendant's Rehabilitation

Defendant also points to his rehabilitative efforts in support of his requests for compassionate release [Case No. 3:08-cr-125, Docs. 140, 146, 155; Case No. 3:11-cr-35, Doc. 160].

10

Case 3:08-cr-00125-TAV-JEM   Document 157   Filed 05/07/25   Page 10 of 13
PageID #: 830

While the policy statement acknowledges that "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement," U.S.S.G. § 1B1.13(d), it may be considered in conjunction with another rationale such as a change in law. Therefore, any rehabilitative efforts cannot "by itself, [be] an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13(d).

Given that the Court has rejected defendant's other extraordinary and compelling arguments, his motions [Case No. 3:08-cr-125, Docs. 140, 146, 155; Case No. 3:11-cr-35, Doc. 160] are hereby **DENIED**. Because "3582(c)[(1)(A)] instructs a court to consider any applicable § 3553(a) factors" only where "the reduction [is] authorized by [steps one and two]," *Jones*, 980 F.3d at 1108, the Court need not address the section 3553(a) factors at this stage.

## IV. Other Motions

Turning to defendant's other motions, the Court notes that defendant filed a second motion for appointment of counsel relating to his request for compassionate release [Case No. 3:08-cr-125, Doc. 147]. But as the Court explained in its prior order [Case No. 3:08-cr-125, Doc. 145] denying defendant's first motion for appointment of counsel [Case No. 3:08-cr-125, Doc. 141], the Federal Defender Services of Eastern Tennessee ("FDSET") was already appointed, pursuant to Standing Order 19-04 to represent defendants for purposes of compassionate release when FDSET determines the motion would not be frivolous. And, indeed, FDSET reviewed defendant's case and filed a notice that it would

11

not file any supplemental filings [Case No. 3:08-cr-125, Doc. 149]. Accordingly, defendant's second motion for appointment of counsel [Case No. 3:08-cr-125, Doc. 147] is **DENIED as moot**.

Defendant also filed two pro se motions asking for leave to proceed in forma pauperis with regard to his compassionate release motions [Case No. 3:08-cr-125, Docs. 142, 148]. But there is no fee associated with the filing of a compassionate release motion. *See* Fees, United States District Court Eastern District of Tennessee, available at https://www.tned.uscourts.gov/fees (accessed May 6, 2025). Accordingly, defendant's motions to proceed in forma pauperis [Case No. 3:08-cr-125, Docs. 142, 148] are **DENIED as moot**.

Next, defendant filed a motion to compel the government to respond to is motions for compassionate release [Case No. 3:08-cr-125, Doc. 152]. But, at the time that defendant filed that motion, the government had already filed a response in opposition [Doc. 150]. Accordingly, such motion to compel response [Case No. 3:08-cr-125, Doc. 152] is **DENIED as moot**.

Finally, defendant filed a motion "for due process" in which he states that he "asks this Court [to] go beyond its limitations of power and grant Defendant the relief that the law will grant" [Case No. 3:08-cr-125, Doc. 154; Case No. 3:11-cr-35, Doc. 159]. Defendant also raises arguments that, in 2015, the "government violated [his] arraignment" and therefore violated his due process rights, and that his counsel was ineffective [*Id.* at 1–2]. But the "limitations of [the Court's] power" defendant references in his motion are

12

just that—limitations on the Court's power. The Court cannot grant relief which is it not authorized to grant. Moreover, to the extent that defendant raises arguments regarding his arraignment or his counsel's assistance during his underlying criminal proceeding, such claims are more appropriately raised in a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255, not a motion for compassionate release. *See United States v. Galemmo*, No. 1:13-cr-141, 2022 WL 1184146, at *2 (S.D. Ohio Apr. 21, 2022) ("a federal prisoner cannot raise claims to vacate a sentence under 28 U.S.C. § 2255 in a motion for compassionate release"). Thus, defendant's motion "for due process" [Case No. 3:08-cr-125, Doc. 154; Case No. 3:11-cr-35, Doc. 159] is **DENIED**.

## V. Conclusion

For the reasons set forth more fully above, defendant's motions for compassionate release [Case No. 3:08-cr-125, Docs. 140, 146, 155; Case No. 3:11-cr-35, Doc. 160] are **DENIED.** Defendant's motions for appointment of counsel [Case No. 3:08-cr-125, Doc. 147], leave to proceed in forma pauperis [Case No. 3:08-cr-125, Docs. 142, 148], and motion to compel government response [Case No. 3:08-cr-125, Doc. 152] are **DENIED as moot**. Finally, defendant's motion for due process [Case No. 3:08-cr-125, Doc. 154; Case No. 3:11-cr-35, Doc. 159] is **DENIED**.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE